# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Stephen Biggin,　　　　　　　　　　　　　　Case No. 3:17-CV-2193

　　　　　Plaintiff

　　　　　v.　　　　　　　　　　　　　　　　**ORDER**

The State of Ohio, *et al.*,

　　　　　Defendants

　　　This is a civil rights case under 42 U.S.C. § 1983. Plaintiff Stephen Biggin claims that the individual defendants Ohio Department of Natural Resources Ranger Jeremy Berger and Lucas County, Ohio, Deputy Sheriff Christopher Gonia violated his constitutional rights under the First and Fourteenth Amendments when they arrested him at the Maumee Bay State Park Resort in Oregon, Ohio.

　　　Biggin alleges that Berger and Gonia violated those constitutional rights by arresting him, using excessive force while doing so, charging him with misdemeanors, and causing him to be detained pending release on bond. The arrest, charges, and detention, Biggin asserts, were without probable cause or reasonable suspicion. He further claims that in arresting, charging, and detaining him, the officers violated his right of free speech.

　　　Biggin also sues the State of Ohio, the Lucas County Sheriff's Department, and the City of Oregon, Ohio. He claims these governmental entity defendants are liable for failing to train the individual defendants adequately and having them, in the course of their unlawful treatment of Biggin, implement Constitution-violative policies, practices, and/or customs and usages.

He brings those claims under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), on the basis that the actions of the individual defendants were under color of law. He also brings state constitutional and tort claims against the individual defendants and on the basis of *respondeat superior* against the governmental entities.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

In a February 13, 2018 order, I memorialized the oral dismissal I pronounced during a status/scheduling conference, stating in that order, "All defendants, except Sheriff Deputy Gonia and Officer Berger" were dismissed from the case. (Doc. 11 at 1).

Pending is Biggin's combined Motion for Reconsideration and Motion to Rejoin Defendants the State of Ohio, Lucas County Sheriff's Department, and/or City of Oregon. (Doc. 40).[1]

For the reasons that follow, I conclude that the State is not a "person" under § 1983, and it is, in any event, immune from suits for damages. I conclude also that the Sheriff's Department

---

[1] Biggin styles his motion as one for reconsideration and to rejoin, rather than to vacate judgment. Defendants argue that the motion does not fit easily into Rules 59 or 60 of the Federal Rules of Civil Procedure, as my memorialization of oral dismissal did not involve entry of judgment. Instead, that order had the effect of simply dismissing the complaint as to the governmental defendants. I entered that order because plaintiff's counsel had no answer when I asked him what his factual basis was for suit against them. Plaintiff's counsel only asked that dismissal be without prejudice, which it was.

I believe I can best most properly view the motion, which asks for *reconsideration* (*i.e.*, of whether the complaint states an adequate factual basis), as a motion to reinstate the complaint against the defendants. Plaintiff, not having sought leave to file an amended complaint, stands on his original complaint. He simply alleges, based on evidence outside the complaint's four corners, that he now has evidence that would enable a jury to return a verdict against the governmental defendants.

Giving due weight in plaintiff's favor to that evidence, I conclude that it does not support the inferences he draws or that he, even taking that evidence into account, states a plausible claim under *Monell* against those defendants.

is not *sui juris* and thus is not amendable to suit. Lastly, the reinstatement of the complaint against the City would be futile, as it fails to state a plausible cause of action against that entity. Consequently, I deny Biggin's motion.

**Background**

On September 17, 2017, Biggin attended a family wedding at Maumee Bay State Park Resort (Maumee Bay). (Doc. 1 at 3, ¶ 17). Shortly before midnight, he was about to go out to a waiting taxi. Berger and Maumee Bay employees approached him before he got outside. (Doc. 1 at 3-4, ¶ 18, 19). Berger told Biggin, who was holding a bottle of beer, that he was being too loud and asked him to quiet down and what he planned to do next. (Doc. 1 at 3-4, ¶ 19; Doc 42-1 at 24). Stopping at a trashcan to throw away the beer bottle, Biggin responded that he planned to leave. (Doc. 1 at 4, ¶ 20).

As Biggin began walking toward the taxi, Berger followed him. Berger asked to see his driver's license. (Doc. 1 at 4, ¶ 21). Biggin did not comply but continued on toward the taxi. (Doc. 1 at 4, ¶ 23). Berger kept following Biggin, repeatedly demanding to see Biggin's license. (Doc. 1 at 4, ¶ 26). Again, Biggin refused, asking Berger why he needed to see Biggin's license. (Doc. 1 at 4 ¶ 26).

While leaving, with Berger following, Biggin, yelled, "fuck you" at Berger. (Doc. 1 at 4, ¶ 24). As Biggin was approaching the taxi, Berger instructed the taxi driver not to leave. (Doc. 1 at 4, ¶ 27).

Deputy Sheriff Gonia arrived as Biggin walked away from the taxi. (Doc. 1 at 4, ¶ 29). Sometime thereafter, Berger, with other officers, including Deputy Gonia, assisting, tackled

Biggin to the ground, pinned him down, handcuffed him, and arrested him. (Doc. 1 at 4-5, ¶ 29).[2] Biggin resisted, asked why the officers were arresting him and why he needed to show his license, and claimed he "d[id] nothing wrong." (Doc. 1 at 4, ¶ 31).

Next, either Berger or Gonia (though Biggin cannot remember which) drove Biggin to the Lucas County Jail. (Doc. 1 at 5, ¶ 34; Doc. 42-1 at 97). Berger and Gonia, along with Lucas County Jail employees, booked Biggin into the jail, where he stayed overnight in a holding cell. (Doc. 1 at 5, ¶ 34; Doc. 42-1 at 209). Biggin claims that he asked Berger and Gonia to explain why they arrested him, but they ignored his questions. (Doc. 1 at 5, ¶ 34; Doc. 42-1 at 209).

While in holding, Biggin received a slip of paper, listing the charges against him, through the cell door. (Doc. 1 at 5, ¶ 36). Biggin posted bond, and jail personnel released him. (Doc. 1 at 6, ¶ 37; Doc. 42-1 at 208). He claims that jail personnel threatened not to release him if he declined to sign for the acceptance of charges. (Doc. 1 at 6, ¶ 37). Though he signed that document, Biggin never admitted guilt to any charge alleged. (Doc. 1 at 6, ¶ 42).

Several months later, the Oregon Municipal Court prosecutor dismissed charges of disorderly conduct and obstruction of justice, and continued a charge of resisting arrest "to the call of the prosecutor."[3]

**Standard of Review**

Although the Federal Rules of Civil Procedure do not provide for a motion for reconsideration, the Sixth Circuit has held that I may treat such a motion as a motion to alter or

---

[2] Biggin does not recall how Deputy Gonia actually assisted in the physical takedown, but asserts Gonia participated in both the takedown and arrest. (Doc. 42-1 at 199).

[3] I take judicial notice that this is a form of informal, unsupervised probation in municipal courts in Toledo and its environs. If, at the end of a set period, the defendant has not had further arrests and charges, the original charge is dismissed.

amend a judgment under Federal Rule of Civil Procedure 59(e). *Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir. 1979). I may grant a motion to amend or alter judgment if there is a clear error of law or newly discovered evidence exists, an intervening change in controlling law occurs, or to prevent manifest injustice. *See Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

**Discussion**

Biggin contends that he has new evidence justifying reconsideration of my February 13, 2018 order dismissing all defendants except Officer Berger and Deputy Gonia. Specifically, Biggin claims that I should rejoin the State of Ohio, the Lucas County Sheriff's Department, and the City of Oregon. He bases his motion on portions of Berger's deposition testimony that, he claims, reveal two newly discovered circumstances indicative of liability on the part of the governmental entities.

First, that: the Sheriff's Department implanted a policy whereby officers relied on a list, posted on the jail booking area wall, of Ohio Revised Code section citations, to which officers could refer when preparing charging documents. Biggin refers to this list as a "cheat sheet." (Doc. 40 at 2).

Second, that: the Ohio Department of Natural Resources, the Lucas County Sheriff, and the City of Oregon Police Department maintained a custom in conjunction with Maumee Bay where those entities' officers acted as "private security guards" and, further that those defendants failed to train the officers adequately for that duty. (Doc. 40 at 6).

**I. The State Is Immune from Damages Claims
Under the Eleventh Amendment**

The State argues that Biggin's claims against it fail because the Eleventh Amendment insulates it entirely from entry of a money judgment against it, and because it is not

5

a "person" under 42 U.S.C. § 1983. (Doc. 44 at 5). Biggin does not respond to this argument. Instead, he asserts that the entity "which appears to be the State of Ohio" is a necessary party to this case. (Doc. 49 at 1).

I agree with the State.

## A. The Eleventh Amendment Protects The State From Money Judgments

The Eleventh Amendment "bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court." *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989) (additional citations omitted)).

Here, the State of Ohio has neither waived its sovereign immunity nor consented to suit. Accordingly, the State is immune from Biggin's claims.

## B. The State Cannot Be Sued Under § 1983 Because It Is Not A "Person"

The State alternatively argues that it is not a "person" within the meaning of 42 U.S.C. § 1983. (Doc. 44 at 5).

Section 1983 authorizes suit against "[e]very person who, under color of" law, violates an individual's federal constitutional or statutory rights. The Supreme Court has explained that a state is not a person "within the meaning of § 1983[.]" *Will*, *supra*, 491 U.S. at 64; *see also Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999).

Accordingly, Biggin's claim against the State fails for the additional reason that it is not subject to suit under § 1983.

## II. The Lucas County Sheriff's Department
## Is Not Amenable to Being Sued

The Lucas County Sheriff's Department argues that it is not an entity that is amenable to suit – *i.e.*, it is not *sui juris*. (Doc. 43 at 4). It is entirely correct.

Under Ohio law, "a county sheriff's office is not a legal entity capable of being sued for purposes of §1983." *Petty v. Cty. of Franklin*, 478 F.3d 341, 347 (6th Cir. 2007).

In *Rhodes v. McDannel*, 945 F.2d 117 (6th Cir. 1991), the plaintiff raised a § 1983 claim against a sheriff's department for a "fail[ure] to properly train and supervise its deputies." *Id.* at 120. The court dismissed the department from the case, holding that it was "not a legal entity subject to suit" and that the "sheriff [was not] responsible for the misconduct of its deputies." *Id.*

Biggin's claim against the Lucas County Sheriff's Department likewise fails because it is not an entity subject to suit under § 1983. *See Petty*, *supra*, 478 F.3d at 347.

## III. Plaintiff Fails to State Actionable
## Claims Against the City

Plaintiff asserts two § 1983 theories against the City, namely that: 1) Officer Berger and Deputy Gonia, acting as City employees, subjected Biggin to and implemented the City's unconstitutional policy and practice of violating the constitutional rights of persons its officers have arrested, booked into jail, and charged; and 2) the City, per policy and practice, failed adequately to train Officer Berger and Deputy Gonia, thereby causing them to violate Biggin's constitutional rights.

The contentions underlying these claims are long on conclusions, mostly of law, and are woefully short on specifics. Consequently, both of Biggin's *Monell* claims fail to state plausible claims under the *Twombly/Iqbal* mandate:

> [A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678,

129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quotation marks omitted).

*Eslinger v. City of Kent*, 2019 WL 2250060, *1 (N.D. Ohio) (Lioi, J.).

Herewith, verbatim, are the plaintiff's allegations against the City, as set forth in the numbered paragraphs in which they appear in the complaint (Doc. 1):

13. At all relevant times, the State of Ohio and the City of Oregon hired, employed, supervised and controlled the individual Defendants.

15. Defendants Berger and Gonia were acting under the color of state law in the course and scope of their duties and functions as agents, employees and officers of the State of Ohio and/or City of Oregon and/or as an agent of Maumee Bay State Park, and engaged in the conduct described herein.

38. Plaintiff, Stephen Biggin, was originally charged with Failure to Show Identification, as well as Disorderly Conduct while Intoxicated, Resisting Arrest, and Obstructing Official Business per the Clerk of Court for the Oregon Municipal Court's Bail report dated September 19, 2016.

39. Upon presentation of the complaints to the Prosecutor for the City of Oregon, Failure to Show Identification was not filed as a complaint, leaving the Disorderly Conduct, Resisting, and Obstruction, all filed on September 19, 2016.

41. After many court appearances and the Plaintiffs continued request for Jury Trial, the City of Oregon offered to dismiss the charge of Disorderly Conduct and Obstruction, and to dismiss Resisting "at the call of the Prosecutor," on April 19, 2017.

47. The actions of the individual Defendants were the result of the State of Ohio and/or the City of Oregon's failure to properly train, supervise and discipline its officers, including Defendant, Ranger Berger, and Defendant, Deputy Gonia.

48. At all relevant times herein, Defendant State of Ohio and/or City of Oregon, acting through the ODNR and the Lucas County Sheriff developed, implemented, enforced, encouraged and sanctioned de facto policies, practices, and/or customs that allowed the Defendants Ranger Berger and Deputy Gonia to exhibit deliberate indifference to the Plaintiffs constitutional rights and allowed the violation of those same rights.

Because plaintiff elected not to seek leave to amend his complaint when he filed his present motion, his original contentions stand. This is so notwithstanding his "newly discovered" evidence derived from Berger's and Gonia's deposition testimony (Doc. 38-1; Doc. 47).

### A. Plaintiff's Claim That the City Employed Officer Berger and Deputy Gonia Fails Under *Twombly/Iqbal* and *Monell*

The gravamen of plaintiff's *Monell* claim against the City is that Officer Berger and Deputy Gonia somehow were working for the City, rather than, respectively, the State and Lucas County, when they arrested, booked, and charged the plaintiff.

In *Monell*, *supra*, 436 U.S. at 654, the Supreme Court held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. . . . Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." A plaintiff may therefore sue a municipality under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690.

The complaint's claim that *State* Officer Berger and *County* Deputy Gonia were *City employee*s roots itself in part of Berger's deposition testimony. He testified that Oregon officers routinely patrol the Maumee Bay premises. But that fact, standing alone, without any other indicia, as it is, of an employer-employee relationship does not cause those officers, in effect, to

become employees, agents, or subject to the supervision of Maumee Bay, a state-owned facility, or its private management.[4]

Even accepting that the City allows its officers to undertake employment to provide "private security," plaintiff alleges no facts showing they do so as City employees, rather than as employees of Maumee Bay. Though plaintiff alleges the City remains responsible for their actions, he provides no facts showing that it, rather than Maumee Bay, controls what the officers do in their "private security" capacity.

Thus, the facts that City officers routinely patrol the premises, and that they act as "private security" adds nothing to plaintiff's claim against the City. This is so for two reasons: 1) plaintiff points to nothing illegal in the City's allowing its officers to secure private employment; and 2) even assuming that the officers wrongfully arrested, assaulted, and charged the plaintiff, there is no *evidence* that, in doing so, they were implementing City policy, practice, or custom and usage.

As to patrolling the premises: I take judicial notice that Maumee Bay State Park is within the corporate limits of the City of Oregon. That its officers patrol its roadways is not only legal, it is to be expected. The plaintiff does not connect that activity to what, if anything, its officers may have done to the plaintiff as he was arrested and subdued.

---

[4] If such transformation occurred, plaintiff could not prevail against the City – or the State or the private entity that runs the resort. If, while there, City officers were acting as State employees, the State would be immune for the reasons stated above. If acting as "private security," as plaintiff alleges, the City officers would be under the direction, supervision, and control of the private management, making it, not the City, potentially liable on a *respondeat superior* basis – which plaintiff no longer asserts against that entity.

## B. Plaintiff Insufficiently Alleges a Policy
## of Inadequate Training Against the City

Biggin likewise does not allege any *facts* to sustain his conclusory contention that somehow the City, even when its officers were on the resort's premises, controlled what officers from other agencies did, or that it had a legal obligation to, or did in fact, supervise them.

The Sixth Circuit recognizes a systematic failure to train police officers adequately as a custom or policy which can lead to city liability under *Monell*. *E.g.*, *Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) (citing *City of Canton v. Harris*, 498 U.S. 378, 388 (1989). In *Harris*, *supra*, the Supreme Court stated that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." 498 U.S. at 389.

As the Sixth Circuit stated in *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) the Supreme Court in *Harris*, *supra*, 498 U.S. at 1205-06, "established three distinct facts which the plaintiff must prove: that a training program is inadequate to the tasks that the officers must perform; that the inadequacy is the result of the city's *deliberate indifference*; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury."

As one court recently stated:

> A failure-to-train claim has an *even higher evidentiary requirement*. A failure-to-train claim only arises in limited circumstances and is at its most tenuous where a claim turns on a failure to train. To satisfy the statute, a municipality's failure to train its employee in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact.

*Smith-Warren v. City of Sterling Heights*, 2019 WL 2996182, *3 (E.D. Mich.) (citations and quotations omitted) (emphasis added).

Indeed, the Supreme Court has made clear that a fact-finder cannot "infer a thoroughly nebulous 'policy' of 'inadequate training' on the part of the municipal corporation from [a] single incident described" in a complaint. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985); *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 406 (1997) ("[t]hat a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation"); *Richardson v. City of Cleveland*, 2012 WL 4210469, *4 (N.D. Ohio) (Wells, J.) (single conclusory allegation of wrongdoing insufficient to show pervasive practice).

But that is what we have here. As in the cases cited above, the *facts* in Biggin's complaint, as opposed to its open-ended, broad-ranging conclusory allegations, at most show a single instance involving not a City, but a State and a County, officer committing alleged Constitution-violative actions. Those conclusions are insufficient to support Biggin's counter-intuitive contentions that the misconduct he attributes to Officer Berger and Deputy Gonia somehow stemmed from the *City's* insufficient training of them to perform their "private" duties at Maumee Bay.

Here, as in *Austin v. City of Cincinnati*, 2015 WL 5680382, *3 (S.D. Ohio), "plaintiff's conclusory allegations of an 'implicit or explicit' unidentified policy and of a failure to train and supervisor [*sic*], without more, fail to state" a plausible § 1983 claim. Plaintiff's conclusory allegations, utterly devoid as they are, of any *factual* underpinning, simply cannot sustain a policy/practice failure to train claim. *See Engle v. City of Cuyahoga Falls*, 2015 WL 3852143, *6 (N.D. Ohio) (Lioi, J.).

Nor do the snippets of deposition testimony Biggin picks out of the record adequately support his claim. Biggin submits that Berger's deposition testimony wherein he stated he *may*

12

have looked at the citation list on the booking area wall *or* at his phone while preparing the somehow indicates inadequate training. Aside from the inconclusive nature of Berger's testimony, his reliance, even if that's what it was, on the posted list is no indication he was ill-trained as to how lawfully to make an arrest.

Instead, referring to the list manifested a desire to be accurate in stating the charge, thereby giving Biggin his due process right to notice of that charge.

The *reductio ad absurdum* of plaintiff's claim is that, if correct, its logical conclusion is to expose every governmental entity that gives its officers a "*Miranda* Card" risks being liable for a § 1983 claim.

Thus, even taking plaintiff's "new evidence" into account, he has not stated a plausible claim for relief against the City of Oregon.

**Conclusion**

I initially dismissed the § 1983 claims against the State, Sheriff's Department, and City without prejudice to give the plaintiff time to clothe the barebones conclusions with facts.

Though he has had ample time to develop facts to support his claims, has not done so.

Too much is missing that, if it exists, could make his claims viable.

He asserts that there is an employer/employee/agent, control and responsibility relationship between the City and State Officer Berger and County Deputy Gonia. But he does not relate, *inter alia,* how this unusual joint multi-entity relationship came about and functions. It certainly did not result from the mere fact that Maumee Bay is State owned and is within Oregon's corporate limits and that its Municipal Court has jurisdiction over misdemeanor offenses committed on the resort's premises.

Among the missing *facts* are: 1) the legal, contractual, or other source of the City's alleged authority and responsibility to train and supervise State and County officers whose duty stations are at, or may be dispatched to, the resort; 2) when and how were those duties were created, codified, memorialized, or otherwise confirmed and assumed; 3) how and when did the City fail to supervise and, with deliberate indifference, train those officers; 4) what was lacking in what the City did or left undone; 5) what specific constitutionally wrongful policies or practices had the City previously adopted; and 6) when and how did it adopt those policies and practices, and which among them did the individual defendants implement in their encounter with the plaintiff?

These are all factual matters which, if they exist, diligent discovery could ascertain. None of these *facts* appears in the complaint or came out in Officer Berger's deposition.

The *Twombly/Iqbal* doctrine repudiates the "you did me wrong" notice pleading. But that, is what we have here. And it's quite clear that, after more than enough time to uncover facts that make plausible, and potentially successful, that claim, that's all we still have.

That being so, granting plaintiff's motion and bringing the City back into this case would be futile.

It is, accordingly, hereby

ORDERED THAT plaintiff's motion for reconsideration and to rejoin dismissed parties (Doc. 40) be, and the same hereby is denied.

The Clerk shall forthwith set a status/scheduling conference; the parties shall submit status report(s) not later than ten days before that conference.[5]

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

---

[5] I ask plaintiff's counsel to file further briefs in this case double-spaced, rather than single-spaced.